**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tom Raatz, et al., | No. CV-16-00170-PHX-DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| Dealer Trade Incorporated, | |
| Defendant. | |

Plaintiffs Tom Raatz, Marcine Raatz, and TMR LLC filed this action against Defendant Dealer Trade Inc. d/b/a Luxury Motorsports, asserting violation of the Federal Odometer Act (49 U.S.C. § 32701) and breach of contract. Doc. 1. After stipulating to the dismissal of Plaintiffs' Odometer Act claim (Doc. 104), the parties have filed cross-motions for summary judgment on the breach of contract claim. Docs. 114, 116, 119, 123. No party requests oral argument. The Court will grant Plaintiffs' motion in part and deny Defendant's motion.

**I.    Background.**

The following facts are undisputed. In the summer of 2015 Plaintiffs were looking to purchase a vehicle for their family. Doc. 115, ¶ 1; Doc. 116 at 2 (stating that Defendant does not contest ¶¶ 1-24 of Doc. 115). Plaintiffs saw Defendant's advertisement for a used 2010 Infiniti QX56 with less than 36,000 miles ("QX56," or "the Vehicle"). Doc. 115, ¶ 2. In August 2015, Plaintiffs traveled from Iowa to Arizona

to purchase the Vehicle. *Id.*, ¶ 3. Throughout the sales process, Defendant represented to Plaintiff that the Vehicle had less than 36,000 actual miles. *Id.*, ¶ 4.

On August 24, 2015, the parties entered into a Retail Buyer's Order ("RBO"), in which Defendant stated that the Vehicle had 35,648 miles and Plaintiffs agreed to purchase the Vehicle for $33,359.75. *Id.*, ¶¶ 6-8. The RBO stated that the Vehicle "is sold 'AS IS – NOT EXPRESSLY WARRANTED OR GUARANTEED.'" Doc. 117, ¶ 14; Doc. 120 at 1 (stating that Plaintiffs do not dispute ¶¶ 10-15 of Defendant's separate statement of facts (Doc. 117)). Plaintiffs put $3,000 down, and financed the remaining purchase amount through a credit union. Doc. 115, ¶ 9.

Plaintiffs drove the Vehicle back to Iowa and took it to the Willis Infiniti dealership for service. *Id.*, ¶ 10. The dealership informed Plaintiffs that service records showed the Vehicle was serviced approximately four years earlier, on September 29, 2011, at which time it had an odometer reading of 46,731 miles. *Id.*, ¶ 11. After learning of the mileage discrepancy, Plaintiffs immediately contacted Defendant. *Id.*, ¶ 14.

Between October 6 and October 19, 2015, Plaintiffs reached out to Defendant on four separate occasions – once by telephone and three times by email – seeking a refund of the sales price, but Defendant did not respond. *Id.*, ¶¶ 15-20. Plaintiffs have been forced to pay off their loan with the credit union due to the reduced value of the Vehicle. *Id.*, ¶ 21. Plaintiffs would not have purchased the Vehicle had they known it had more mileage than was reflected by the odometer. *Id.*, ¶¶ 22-23.

**II.     Legal Standard.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a

party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**III. Plaintiffs' Motion for Summary Judgment.**

Plaintiffs seek summary judgment on their breach of contract claim on the basis of breach of express warranty. Doc. 114 at 5-7. Defendant argues that breach of express warranty was not asserted in Plaintiffs' complaint and is a separate and distinct claim. Doc. 116 at 1-10. Defendant also argues that the RBO disclaimed any express warranty and that the mileage statement in the RBO did not constitute an express warranty.

**A. Adequacy of Plaintiffs' Complaint.**

In their complaint, Plaintiffs plead the following facts:

[Defendant] sold the QX56 to Plaintiffs on August 24, 2015.

Plaintiffs and [Defendant] signed a contract memorializing the purchase.

In the contract, [Defendant] represented that the QX56 had 35,648 original miles.

Plaintiffs paid [Defendant] $30,459.75 to purchase the QX56.

Plaintiffs relied upon the affirmative representations of [Defendant] that the QX56 had 35,648 actual miles in making the decision to buy the QX56.

Plaintiffs did not know about the prior mileage history of the QX56.

Had Plaintiffs known about the prior mileage history they would not have purchased the QX56.

Doc. 1, ¶¶ 18-24. The complaint later alleges that this constituted a breach of contract. *Id.* at 4.

Defendant contends that these allegations fail to allege a claim for breach of express warranty because the complaint fails to include: (1) "separate and distinct counts for alleged breaches of express warranty and implied warranty of merchantability, both of

which relate to the contract, but do not give rise to a breach of contract claim"; (2) any language referencing the Arizona Uniform Commercial Code, which would govern a breach of express warranty in this instance; and (3) any "averments that [Defendant] warrantied anything, much less the accuracy of the odometer." Doc. 116 at 7.

The Court is not persuaded. Under Arizona law, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." A.R.S. § 47-2313(A)(1). The complaint clearly alleges an affirmation of fact (the mileage represented in the contract), in connection with a sale of goods, and facts suggesting that the affirmation became a basis for the bargain (Plaintiffs relied on the mileage representation and would not have entered the contract had they known the mileage was incorrect). The complaint thus pleads the elements of a breach of warranty claim.

In Arizona, "[e]xpress warranties are treated like any other contract and interpreted according to general contract principles." *Chaurasia v. Gen. Motors Corp.*, 126 P.3d 165, 169 (Ariz. Ct. App. 2006). The same is true for implied warranties. *Lofts at Fillmore Condo. Ass'n v. Reliance Commercial Const., Inc.*, 190 P.3d 733, 734 (Ariz. 2008) ("A claim for breach of the implied warranty sounds in contract."). And Arizona courts repeatedly have held that breach of warranty claims arise out of contract. *Id.* at 174 ("Time after time, Arizona courts have held that a claim for breach of warranty does arise out of contract for purposes of A.R.S. § 12–341.01(A)."); *Woodward v. Chirco Constr. Co., Inc.*, 687 P.2d 1269, ___ (Ariz. 1984) (holding that claims for breach of implied warranty arise out of contract); *Colberg v. Rellinger*, 770 P.2d 346, ___ (Ariz. Ct. App. 1998) (holding that claims for breach of express warranties sound in contract); *Ponderosa Plaza v. Siplast*, 888 P.2d 1315, ____ (Ariz, Ct. App. 1993) (awarding reasonable attorneys' fees to the defendant under A.R.S. § 12–341.01(A), finding that any duty to the plaintiff arose out of an express warranty and that a breach of that warranty arises out of contract, not tort). Indeed, this Court has noted that a breach of

contract claim can be proved by establishing breach of warranty. *Palmer v. Web Indus. Inc.*, No. CV 04-2362-PCT-SMM, 2007 WL 45927, at *7 (D. Ariz. Jan. 8, 2007) ("In order to succeed on her breach of contract claim, Plaintiff must demonstrate that the dealership made an 'express warranty,' which was later breached.").

Given these authorities and the fact that Plaintiff pleaded facts which Arizona law would deem a breach of warranty, the Court cannot conclude that Plaintiffs have failed to assert a breach of warranty claim in this case. The Court notes that Defendant does not assert that it was unaware of a breach of warranty claim or was prejudiced by Plaintiffs' failure to expressly label their claim as "breach of warranty."

Defendant argues that each case cited by Plaintiffs in support of their motion expressly included a claim for breach of warranty in the complaint. Doc. 116 at 6-7. While it may be true that parties often plead both breach of contract and breach of warranty claims, Defendant presents no case holding that a claim for breach of warranty is barred if the only claim asserted in the complaint is breach of contract. The Court has found no such authority.

**B. Was An Express Warranty Created?**

The parties disagree on whether a seller's representation of the mileage of a vehicle constitutes an express warranty under A.R.S. § 47-2313. An express warranty is created if four elements are met: (1) any affirmation of fact; (2) made by the seller to the buyer; (3) which relates to goods; and (4) becomes part of the basis of the bargain. *Id.*

In this instance, it is uncontested that Defendant affirmed to Plaintiffs that the mileage of the vehicle was 35,648. *See* Doc. 115, ¶ 7; Doc. 117, ¶ 1. Similarly, given the basic fact that a vehicle's value is determined in significant part by the vehicle's mileage, Defendant's representation of the Vehicle's mileage clearly related to the Vehicle. *See* A.R.S. § 47-2313. The only remaining question is whether the Vehicle's mileage formed a basis of the bargain during the negotiation for sale. *Id.*

Plaintiffs' statement of facts asserts that they drove from Iowa to Arizona to purchase the Vehicle which was advertised as having less than 36,000 miles, Defendant

affirmatively represented to them that the Vehicle had 35,642 miles, and Plaintiffs would not have purchased the Vehicle had they known that it had more mileage than Defendant represented. Doc. 115, ¶¶ 3, 7, 22. Defendant admits each of these facts. Doc. 117 at 1-2. These undisputed facts establish that the Vehicle's mileage was a basis of the bargain.

Defendant argues that "although the contract and any documents relating to the purchase of the QX56, reflecting the mileage at 35,648, may be characterized as an affirmation of fact, it does not necessarily give rise to an express warranty." Doc. 116 at 9. In support, Defendant relies on *Roberts v. Robert V. Rohrman, Inc.*, 909 F.Supp. 545, 547 (N.D. Ill. 1995). In *Roberts*, the district court found that a dealer's "repeated representation that the mileage on [a vehicle] at the time of sale was 10,350 was an affirmation of fact but [did] not necessarily give rise to an express warranty" because no evidence had been submitted to show that the inspections reasonably performed by the dealer would have discovered that the odometer was incorrect. *Id.*. at 552. Like the dealer in *Roberts*, Defendant argues that it did not create an express warranty because it did not have the capability to verify the accuracy of the odometer, and only represented the actual mileage of the Vehicle "to the best of its knowledge," as stated in the Secure Odometer Disclosure Defendant presented to Plaintiffs. Doc. 116 at 9.

Although no Arizona case the Court could find addresses the issue, other courts have done so. For example, in *Prishwalko v. Bob Thomas Ford, Inc.*, 636 A.2d 1383, 1390 (Conn. App. Ct. 1994), a Connecticut court considered a similar dispute involving a plaintiff who purchased a used vehicle with an odometer that had been rolled back without the dealer's knowledge. *Id.* at 1385. The court interpreted Conn. Gen. Stat. Ann. § 42a-2-313 – Connecticut's analogous version of A.R.S. § 47-2313 – to apply to the dealer, even though it was unaware of the odometer's inaccuracy. *Id.* at 1390 ("In contracts for the sale of tangible chattels, express warranty encompasses material representations which are false, without regard to the state of mind or the due care of the person making the representation," and "[i]nnocent misrepresentations . . . are still actionable.").

Connecticut's § 42a-2-313 is virtually identical to Arizona's § 47-2313, and the Court agrees with the *Prishwalko* court's analysis. The Court finds nothing in A.R.S. § 47-2313 that requires the dealer to have knowledge of the odometer's inaccuracy in order to create an express warranty regarding the vehicle's mileage. Accordingly, because Defendant presents no evidence that the mileage of the Vehicle did not form a "basis for the bargain," all four elements of § 47-2313 are met and an express warranty was created. To the contrary, the Arizona statute is broad, covering "*[a]ny* affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain[.]" A.R.S. § 47-2313(A)(1) (emphasis added).

### C. The Contract Does Not Limit Express Warranties.

Defendant next argues that "the parties contracted to limit the implied warranties of merchantability . . . and waived all other express and implied warranties." Doc. 116 at 7 (citing Doc. 117, ¶¶ 13-14). In response, Plaintiffs concede that the parties agreed to limit the implied warranties of merchantability. Doc. 119 at 6. But Plaintiffs argue that "express warranties, once made, cannot be disclaimed." *Id.* at 3-4 (citing *Epsman v. Martin-Landers, LLC*, 2007 WL 2819592, at *1 (W.D. Ark. 2007)).

The parties do not cite, and the Court has not found, any Arizona case stating that an express warranty cannot be disclaimed by a contract, but Arizona law clearly disfavors the type of disclaimer used in this case. Specifically, A.R.S. § 47-2316(A) states that "[w]ords or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other[,]" and that "negation or limitation [of an express warranty] is inoperative to the extent that such a construction is unreasonable." A.R.S. § 47-2316(A). The U.C.C.'s comment to the model statute from which this language is drawn states that "[t]his section is designed principally to deal with those frequent clauses in sales contracts which seek to exclude 'all warranties, express or implied.' It seeks to protect a buyer from unexpected and unbargained language of disclaimer by denying effect to such language when inconsistent with language of express warranty[.]" U.C.C. § 2-316, cmt.

1. The disclaimer language relied on Defendant is contained in fine print at the bottom of the RBO. It clearly was not bargained for and is inconsistent with the express representation, earlier on the same page, that the Vehicle had 35,648 miles. Doc. 115-1 at 6.

The U.C.C. comment to the provision underlying A.R.S. § 47-2313 also supports this conclusion, stating that "a contract is normally a contract for sale of something describable and described. A clause generally disclaiming 'all warranties, express or implied' cannot reduce the seller's obligation with respect to such description and therefore cannot be given literal effect under § 2-313." U.C.C. § 2-313, cmt. 4. The RBO clearly included a specific description of the Vehicle has having 35,648 miles. Doc. 115-1 at 6.

**D.  Summary.**

Based on uncontested facts, Plaintiffs have shown that there was an express warranty as to the mileage of the Vehicle, the express warranty was not validly disclaimed in the contract, and the warranty was breached because the mileage was inaccurate. The Court holds on summary judgment that Defendant breached the express mileage warranty in the RBO.

Arizona law provides that "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount. In a proper case any incidental and consequential damages under § 47-2715 may also be recovered." A.R.S. § 47-2714. This case includes a factual dispute regarding the value of the Vehicle on the date it was purchased by Plaintiffs. Plaintiff's expert opines that the Vehicle had a value of $16,500 (Doc. 115-1 at 23), while Defendant's expert disagrees with both the conclusion and the basis of Plaintiff's expert's opinion (Doc. 117 at 8-11). Specifically, Defendant's expert disagrees with the number of actual miles Plaintiffs' expert "threw out as conceivable," and with the impact a "Box B" or "Box C" title has on a vehicle's

value. *Id.* Defendant's expert does not, however, provide an opinion as to the precise actual value of the vehicle. *See id.* at 12. Although the absence of a defense opinion on the value of the Vehicle raises questions regarding the utility of a trial in this case (the time for expert disclosures has passed), this dispute between experts precludes summary judgment on the issue of damages.

**IV. Defendant's Motion for Summary Judgment.**

Defendant argues that Plaintiffs' claims against Defendant must be dismissed because Plaintiffs plead breach of contract, not breach of warranty, and Plaintiffs admit that they have no evidence to support their assertion that Defendant falsely represented the Vehicle's mileage. But, as discussed above, Plaintiffs complaint sufficiently pleads a claim for breach of warranty, and a claim for breach of warranty does not require proof that Defendant knew its mileage representation was false. *See Prishwalko*, 636 A.2d at 1390 (finding that even "[i]nnocent misrepresentations . . . are still actionable."). Defendant's motion for summary judgment will be denied.

**IT IS ORDERED:**

1. Plaintiffs' motion for summary judgment (Doc. 114) is **granted in part**.
2. Defendant's motion for summary judgment (Doc. 116) is **denied**.
3. The Court will hold a telephonic hearing on **June 30, 2017 at 2:00 p.m.** to set a date for a trial on damages. Counsel for Plaintiffs shall initiate a conference call to include counsel for all parties and the Court. If a dial-in number is to be used, counsel for Plaintiffs shall provide the dial-in information to all parties and the Court no later than **June 29, 2017 at 12:00 noon**.

Dated this 8th day of June, 2017.

_____
David G. Campbell
United States District Judge